IDA F. FITZWILLIAMS V. MARGARET B. DAVIE ET AL.

Decided January 12, 1898.

**1. Probate Sale—Review on Certiorari.**

A writ of certiorari from the district court to set aside orders made by a probate court is not a matter of right, and when the testimony is that, as a result of the sale of a ward's lands sought to be set aside, the ward has received benefits equal to the value of the property, the probate orders should not be disturbed.

**2. Same—Setting Aside Sale.**

In a proceeding to set aside for irregularities and inadequacy of price a sale of the land by the guardian of an insane ward, it appeared that the property was transferred by the purchaser to one who, from some special motive, agreed to pay, and paid, in consideration therefor, an annuity to the ward during life, the amount of which was in excess of the value of the land and was applied to her support in the insane asylum; Held, that a refusal to set aside the sale for inadequacy of the price on the sale to the original purchaser was proper.

APPEAL from Travis. Tried below before Hon. F. G. MORRIS.

*R. C. Walker,* for appellant.

*Austin & Rose,* for appellees.

KEY, ASSOCIATE JUSTICE.—This is a certiorari proceeding brought by appellant against appellees, to set aside and vacate a guardian's sale made in the estate of Minerva J. Fannin, non compos mentis, in the probate court of Travis County in 1857. There was a non-jury trial, which resulted in a judgment for the defendants, from which the plaintiff has appealed.

Each side presented a number of exceptions to the pleadings filed by the other, and the case appears to have been submitted to the court below upon all questions, and the court, at a subsequent day, filed conclusions of law and fact, which include conclusions upon the exceptions to pleadings. The conclusions of fact are supported by testimony, and are adopted by this court and made the basis of its decision. Said conclusions are as follows:

"1. That the plaintiff is one of the heirs of Minerva Fannin, deceased.

"2. That there was a necessity for the sale in question, in that the ward had no income and no personal property or other means of support, without the resort to the sale of real estate for her support.

"3. That the notice set out in plaintiff's petition is the only notice or citation issued after said application was filed, and that it described other property than that described in the application for an order of sale, and was published for four successive weeks prior to the making of the order of sale, but not for four weeks prior to the commencement of the term of court at which the order of sale was made.

"4. I find that the lot in controversy was of the value of $600 at the time of the sale for $400, and that it could not have been made to appear to the County Court at that time, that a refusal to confirm the sale, and the ordering of a resale of the lot would have resulted in obtaining any better price for the land. The contract which Davie subsequently made to pay $1000 absolutely in yearly payments for five years, and $250 per year during the life of Minerva Fannin, which might and did amount to the payment of thousands of dollars for this lot, certainly was out of all proportion to the value of the lot according to all the testimony. That he had a reason for paying something more than the value of the lot is shown by the witness Seiling, but just all that actuated him in making this extraordinary contract can not now be proved. Suffice it to say that the contract throws no light on the value of the lot, or what it would bring at public outcry among bidders generally having no special reasons for paying more than its value. The court in passing on the sale could only consider what the property would bring if again exposed to a fair sale, and could not be supposed to know of some particular person, who was not a bidder at the sale, having a reason for paying largely more than the value of the property.

"If I could consider the contemporaneous sales which the witness Franklin was told was made of property in the immediate locality of the lot in question as indicating the value of this lot, not more than $1000 would appear to be its value, if it was as good a lot as those nearby which Franklin speaks of, and he throws no light on the subject of what it would probably have brought at public sale. But I can not consider the sales testified about by him, because he only testified of these particular sales from hearsay. The appraisers resided in Travis County, and can not be presumed to have acted upon their own knowledge as to the value

of the lot. They probably acted upon report from others, whose means of knowledge are unknown to the court. Against this, we have the testimony of the witness Seiling, who shows himself to have done business on the opposite side of the street from the lot in question, near by it, about the time of the sale; that he was well acquainted with the values of lots in that locality, and knew the particular physical condition of this lot, which rendered it less valuable than others on a different side of the street and higher than this lot; that it was quite low, and had quite a large basin or sink on it covering a considerable portion of the lot, and that water stood there nearly all the time during the year 1857 and 1858 and prior thereto; that it was not on the side of the street on which the business was done; and that in his opinion, it was, at that time, of the value of $500 or $600. There is no testimony in opposition to this statement of the condition of the lot; and, even if the lots in the immediate neighborhood of this lot, not affected by these objections, were of the value of $1000, it is not made to appear that this lot was not depreciated in value by the special conditions existing on it, so as not to be worth over $600.

"The testimony is not satisfactory on this question of value, but I do not think it has been made to appear that the sale was for a sum so much below the value of the property, as to show that the County Court abused its discretion, or committed error, for which its orders ought to be set aside, in confirming the sale.

"5 That on the 20th day of January, 1858, S. M. Swenson, the purchaser at the guardian's sale, made a special warranty deed to John P. Davie, conveying to him the lot in controversy, in consideration of $200 per annum for five years, and $250 per annum thereafter, during the natural life of Minerva J. Fannin, to be paid to her legally appointed guardian, in which deed a vendor's lien was retained to secure the payment of said purchase money.

"6. That on January 14, 1862, the Legislature of Texas passed a special act, of which the following is a copy:

" 'An Act to authorize the superintendent to receive Minerva J. Fannin into the lunatic asylum, and to contract with her guardian for her support and maintenance.

" 'Section 1. Be it enacted by the Legislature of the State of Texas, that the superintendent of the lunatic asylum be, and he is hereby authorized and required to contract with Thomas F. McKinney, as guardian of Minerva J. Fannin, to receive and care for her in said Asylum, during the term of her natural life, provided that said McKinney shall provide and secure to said asylum an annuity fully sufficient, in the judgment of the superintendent, to support and maintain said Minerva in said asylum during her life, free from charge to the State.

" 'Sec. 2. That said McKinney be authorized to transfer to said asylum any part of the estate of said Minerva, descended to her from her parents, which may be necessary to secure such sum as is requisite to her support and maintenance in said asylum.

" 'Sec. 3. That this act take effect and be in force from and after its passage.

" 'Approved January 14th, 1862.'

"7. That on the 8th day of December, 1862, the said Thos. F. McKinney, guardian of Minerva Fannin, entered into a contract with the superintendent of said asylum for the support and care of said Minerva J. Fannin, during her natural life, in which he assigned to said superintendent the debt of said Davie for the purchase money of the lot in controversy, together with several tracts of land, claimed to be the property of Minerva Fannin, for the support of said ward.

"8. That the lot in question was inherited by Minerva J. Fannin, one-half from her mother and other half from her sister, who inherited said one-half from their mother and died after the death of their mother.

"9. That Jno. P. Davie paid said $200 per annum to the guardian of said Minerva J. Fannin for five years, and thereafter to her guardian, or under his direction, to the superintendent of the State lunatic asylum, where she was maintained and cared for, to pay in part for her support and maintenance under the contract made under said act of the Legislature, during the natural life of said Minerva J. Fannin, who died June 27, 1893.

"10. That John P. Davie died testate before the institution of this suit, and that the defendants are the executors and devisees of said Davie."

Among others, the trial court filed the following conclusion of law:

"4. I am of the opinion, as indicated on the rulings on plaintiff's exceptions, that if a right to set aside the sale in question existed in favor of Minerva J. Fannin, after the sale to Swenson, solely because of the inadequacy of price paid by Swenson, her guardian could utilize this equity or right of action for her benefit, so as to relinquish the right to have said sale set aside for such a sum of money as, taken together with what Swenson paid, would make a fair price for the land. In the case of Clayton v. McKinnon, 54 Texas, 206, it appeared that Clayton, guardian, used money belonging to his ward to purchase land, the title to which was taken in his own name, and sold to vendees, who had knowledge of this fact. The court held that such vendees held the legal title in trust for the ward. But a subsequently appointed guardian prosecuted a money demand for the means of the ward, thus used, instead of suing to recover the land, as he might have done. The Supreme Court held the ward bound by the election of his guardian made in good faith, and there was no evidence that the probate court authorized the guardian to thus relinquish the right to recover the land. There, as here, the title was not in the ward, and it was not a question of selling real estate without an order of the probate court, but it was a question of suing to set aside or obtain a title. In such cases the guardian can accept a money consideration for the equitable right to sue to recover property the title to which has been erroneously passed to another. If any order of the probate court to give effect to such a transaction is required, the probate

court, on motion to set aside the sale at the same term of court at which it was confirmed, might have adopted and approved the acts of the guardian after the transaction was made, if it could have authorized the settlement before it was made. And what the probate court could have done under such circumstances, this court now, sitting in its stead, can do. If the contract, making provisions for future support of the ward, and turning over this claim against Davie to be applied from year to year to the support of the ward was improper, yet after the money had been paid and applied to her necessary support by the guardian directly, or by others under the direction of the guardian, the transaction may be approved·as a like expenditure of the guardian from year to year would have been approved. This view of the question renders it unnecessary to pass on the effect of the legislative act, the constitutionality of which has been assailed."

*Opinion.*—At the probate sale, which appellant seeks to have set aside, S. M. Swenson became the purchaser, and thereafter he conveyed the property to J. P. Davie. Appellee's counsel verbally objected to the jurisdiction of the trial court because S. M. Swenson was not made a party to this proceeding. The trial court sustained this contention, and for that reason, and because no equitable ground for setting aside the orders of the probate court complained of had been shown, the case was dismissed and judgment rendered against appellant and the sureties on her bond for the costs. It is insisted in this Court, that the original purchaser, Swenson, having now no interest in the subject matter of the litigation, is not a necessary party to this proceeding.

We find it unnecessary to decide this question, because in our opinion the court was correct in the second ground upon which the judgment is based, and in this connection we refer to and approve the fourth conclusion of law filed by the trial judge and set out above.

The failure of the notice of sale to properly describe the property was a mere irregularity, and did not deprive the probate court of jurisdiction to make the sale. Davis v. Touchstone, 45 Texas, 897; Robertson v. Johnson, 57 Texas, 64.

We also agree with the trial court in holding that a writ of certiorari to set aside orders made by a probate court is not a matter of right, and if the testimony shows, as in this case, that as a result of the sale, the ward has received benefits equal to the value of the property, the probate orders should not be disturbed.

Appellant complains of the action of the court in excluding certain evidence which, it is claimed, tended to show that the property was worth more than $600 at the time of the sale. A sufficient answer to this is the fact that the court's findings, and the testimony show that as a result of the sale the ward received the benefit of sums of money aggregating much more than $1000, the amount alleged by appellant to be the value of the property. Therefore, if it had been shown by un-

controverted proof that the property was worth $1000, appellant would not have been entitled to the relief sought.

After due consideration of all the questions involved in this appeal, our conclusion is that the judgment should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.